UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WAYNE PHILLIP VANCE,

                          Plaintiff,

     v.                                          9:18-CV-0748
                                                   (MAD/ATB)

THE STATE OF NEW YORK DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
et. al.

                          Defendants.
_____

APPEARANCES:

WAYNE PHILLIP VANCE
12-B-3682
Plaintiff, pro se
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

MAE A. D'AGOSTINO
United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

       On or about June 21, 2018, plaintiff Wayne Phillip Vance ("plaintiff") commenced this

action pro se by filing a complaint, accompanied by an application to proceed in forma

pauperis ("IFP"), an inmate authorization form, a motion for discovery and summary judgment

in his favor, and a motion to appoint pro bono counsel. Dkt. Nos. 1-5. On June 27, 2018, the

Court issued an Order administratively closing the action due to plaintiff's failure to comply

with the filing fee requirements. Dkt. No. 6 ("June Order"). Plaintiff was advised that, if he

desired to pursue this action, he must so notify the Court, file a proper inmate authorization form, and either (1) pay the filing fee of $400.00 in full, or (2) submit a completed, signed, and properly certified IFP application. *Id.* at 2.[1] Plaintiff complied with that Order by filing an IFP Application on or about October 1, 2018. Dkt. No. 18 ("IFP Appl."); Dkt. No. 19. The Clerk has forwarded to the Court for review plaintiff's (1) complaint, Dkt. No. 1 ("Compl."); (2) IFP Application; (3) discovery and summary judgment motion, Dkt. No. 4 ("Discovery Motion"); and (4) motion for the appointment of counsel, Dkt. No. 5 ("Counsel Motion").

## II.    IFP APPLICATION

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP Application that demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 19. Accordingly, plaintiff's IFP Application is granted.

## III.   SUFFICIENCY OF THE COMPLAINT

### A.    Governing Legal Standard

Section 1915(e) of Title 28 of the United States Code ("Section 1915") directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that. . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[2] Thus, even if a plaintiff satisfies the financial criteria to commence an action IFP, it is the court's responsibility to determine whether the plaintiff

---

[1] The page numbers are those assigned by the Court's electronic filing system.

[2] A complaint is frivolous for purposes of Section 1915 when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

may properly maintain the complaint that he filed in this District before the Court may permit him to proceed with the action IFP. *See id.*

Likewise, under 28 U.S.C. § 1915A ("Section 1915A"), a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint. . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that Section 1915A applies "to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid the filing fee"); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (finding that both Sections 1915(e)(2)(B) and 1915A provide a basis for screening prisoner's complaints).

In reviewing a pro se litigant's complaint, the Court has a duty to liberally construe the pleadings, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the

3

Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

### B. Summary of the Complaint

Plaintiff's complaint alleges wrongdoing that occurred while he was incarcerated in Clinton Correctional Facility ("Clinton C.F.") and Upstate Correctional Facility ("Upstate C.F."), both of which are operated by the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl. The complaint names 27 individuals as defendants and another four entities and/or state agencies as defendants. *Id.* at 2-5. Although the complaint references several exhibits (*see, e.g.,* Compl. at 6), the only exhibits received by the Court in conjunction with the complaint are identified as "Exhibit D" and "Exhibit E." Dkt. No. 1-1. The following facts are set forth as alleged by plaintiff in his complaint.

### 1. Uses of Force and Disciplinary Hearings

### a. May 11, 2016

On May 11, 2016, plaintiff was assaulted in Clinton C.F. at approximately 10:00AM by defendants Correctional Officers J. Rief, S. Barcomb, Glen Engstrom, Ambrose Waldron, Chad Rowe, and Travis Baxter. Compl. at 12. Specifically, defendants Rief, Barcomb, Rowe, and Baxter punched plaintiff in the face, defendant Waldron kneed plaintiff in the upper left thigh and choked plaintiff, and defendants Rowe and Baxter forced plaintiff's hands into restraints while plaintiff was pinned to the ground. *Id.* Sergeant G. King[3] witnessed the incident and directed that plaintiff be "forced face first into the officers cage," where defendants Waldron and Engstrom took plaintiff to the floor again and banged his head on the ground. *Id.* Plaintiff suffered multiple injuries from the assault, including finger and fibula fractures. *Id.* at 13. Following the use-of-force incident, plaintiff was issued a false inmate misbehavior report ("IMR") accusing him of attacking defendant Engstrom. *Id.* The officers assaulted plaintiff as a means of intimidating him and interfering with plaintiff's legal actions. *Id.* at 9.

Defendant Mr. S. Bullis conducted a disciplinary hearing on June 29, 2016, related the IMR issued to plaintiff following the use-of-force incident on May 11, 2016 ("June 2016 hearing"). Compl. at 14. Defendant Bullis was biased against and impatient with plaintiff during the hearing, interfered with plaintiff's efforts to contradict witnesses' testimonies, permitted defendant Waldron to testify only by reading the IMR into the record, and redacted a DOCCS directive to thwart plaintiff's preparation for the disciplinary hearing. *Id.* at 10, 15. At the conclusion of the hearing, defendant Bullis found plaintiff guilty of "assault on staff,

---

[3] Sergeant King is not a named defendant. *See* Compl. at 1-5.

violent conduct, creating a disturbance, and refusing a direct order without substantial evidence to support the charges," and sanctioned plaintiff to 205 days in the Special Housing Unit ("SHU"), loss of some privileges, and recommended loss of three-months of good-time credits. *Id.* On September 6, 2016, defendant Donald A. Venettozzi, a Director of the DOCCS Special Housing and Disciplinary Program, affirmed the June 2016 hearing determination without reviewing the record. *Id.* at 16. On November 22, 2016, defendant A. Rodriguez, another Director of the DOCCS Special Housing and Disciplinary Program, ordered a rehearing of the June 2016 hearing with no authority to do so. *Id.*

The rehearing was conducted on December 21, 2016, by defendant Hearing Officer Mrs. M. Liberty ("December 2016 hearing"). Compl. at 16. Defendant Liberty exhibited bias towards plaintiff during the hearing, refused to permit witnesses from testifying, and "wrongfully excluded the plaintiff from the disciplinary proceeding because of his efforts to defend himself . . . while mechanically restrained in an inappropriate position at the hearing." *Id.* at 16-17. Plaintiff was found guilty of assault on staff, violent conduct, creating a disturbance, and refusing a direct order at the conclusion of the hearing, and plaintiff was sanctioned to 205 days in the SHU, loss of some privileges, and recommended loss of good-time credits. *Id.* at 17. On February 8, 2017, defendant Venettozzi affirmed the December 2016 hearing determination without reviewing the record. *Id.*

### b. August 26, 2016

On August 26, 2016, while plaintiff was confined in Upstate C.F., defendants Correctional Officers J. Russell and C. Cox attacked plaintiff while he was inside his cell.

6

Compl. at 18.  They held plaintiff down on the ground and defendant Russell punched plaintiff in the face and kneed him in the left ribs.  *Id.*  Defendant Correctional Officer J. Rufa responded to the area and jumped on plaintiff's lower left leg.  *Id.*  Following the assault, plaintiff was transported to a "holding tank" in a wheelchair, where defendant Nurse G. Waterson "asked [plaintiff] a few questions."  *Id.*  Plaintiff was issued a false IMR charging him with assaulting defendant Russell.  *Id.*

Defendant Liberty conducted a disciplinary hearing on October 14, 2016, concerning the IMR issued to plaintiff following the August 2016 use-of-force incident at Upstate C.F. ("October 2016 hearing").  Compl. at 19.  Defendant Liberty had no authority to hold the hearing because it occurred more than 25 days after the incident.  *Id.*  Additionally, defendant Liberty exhibited bias against plaintiff at the hearing and refused to permit witnesses from testifying.  *Id.* at 19-20.  At the conclusion of the hearing, defendant Liberty found plaintiff guilty of assault on staff, interference with an employee, refusing a director order, and movement violation.  *Id.* at 20.  Defendant Liberty sanctioned plaintiff to 210 days in the SHU with 90 days suspended, loss of some privileges, and recommended four-months loss of good-time credits.  *Id.*  Defendants Venettozzi and Rodriguez did not issue a response to plaintiff's appeal of the December 2016 hearing determination.  *Id.*

### 2.  Medical Care

Defendants Doctor Richard Adams, Nurse Catherine Calley, and Orthopedic Doctor Dragos Macelaru did not provide plaintiff with a splint for his fractured finger or a leg brace for his fibula fracture following the assault at Clinton C.F. on May 11, 2016.  Compl. at 22-23.

Defendants Adams, Calley, and Doctor Mandalaywala did not refer plaintiff to a physical therapist, chiropractor, or specialist following the May 2016 incident, nor did they order a magnetic resonance image ("MRI"). *Id.* at 23. Defendant Waterson refused to conduct an examination of plaintiff following the May 2016 incident. *Id.*

### 3. Supervisory Liability

Based on their capacities as supervisors within DOCCS, the following defendants failed to protect plaintiff from the harms he suffered while confined in Clinton C.F. and Upstate C.F.: (1) DOCCS Commissioner Anthony Annucci, (2) DOCCS Director of the Inmate Grievance Program Karen Bellamy, (3) defendant Venettozzi, (4) defendant Rodriguez, (5) New York State Inspector General in the Office of Special Investigations Mr. Weishaupt, (6) Clinton C.F. Superintendent Michael Kirkpatrick, and (7) Upstate C.F. Superintendent Donald Uhler. Compl. at 24-25.

### 4. New York State Appellate Division, New York State Court of Appeals, and New York Albany County Court

Plaintiff was convicted of an unidentified crime on November 13, 2012, in Erie County Court. Compl. at 6. Plaintiff's motion filed pursuant to New York Criminal Procedure Law 440.10 ("440.10 motion") was denied on September 23, 2016. *Id.* On January 13, 2017 and June 8, 2017, defendant Judge Gerald J. Whalen of the New York State Appellate Division, Fourth Department ("Fourth Department"), denied plaintiff permission to appeal the denial of the 440.10 motion. *Id.* On May 18, 2017 and July 18, 2017, defendant Chief Clerk of the Fourth Department Francis E. Cafarell "dismissed and denied" plaintiff's motion to appeal the denial of the 440.10 motion. *Id.* On September 19, 2017, defendant Judge Rowan D. Wilson of the New York State Court of Appeals ("Court of Appeals") dismissed plaintiff's request for

8

permission to appeal the denial of the 440.10 motion. *Id.* The Fourth Department and Court of Appeals denied plaintiff's motion for the appointment of counsel in connection with his appeals of the denial of the 440.10 motion. *Id.* at 7.

Plaintiff filed a proceeding in New York Albany County Court ("County Court") pursuant to Article 78 of the New York Civil Practice Law and Rules ("Article 78") challenging defendant Liberty's disciplinary hearing determination rendered in October 2016. Compl. at 21. The Article 78 proceeding was improperly transferred to the New York State Appellate Division, Third Department ("Third Department"), by defendant Judge Gerald W. Connolly. *Id.* Plaintiff's request for the appointment of counsel to represent him in connection with the Article 78 proceeding was improperly denied. *Id.*

### 5. Personal Property

Plaintiff's personal color television was confiscated following the May 2016 use-of-force incident at Clinton C.F. and DOCCS "refuse[d] to return" it to plaintiff upon his release from the SHU at Upstate C.F. Compl. at 25.

### 6. Access to Legal Resources

Between August 10, 2015 and August 21, 2015, plaintiff was housed in Upper F Block 9-23 cell at Clinton C.F. to prevent him from continuing to access the library to perfect a legal appeal. Compl. at 8. Plaintiff filed a claim of "wrongful confinement" in the New York State Court of Claims, which was "return[ed] . . . because inmate accounts at Clinton [C.F.] had refused to send the filing fee . . . until after the filing deadline had expired in December 2015." *Id.* Plaintiff was housed in a double-bunk cell while confined in Upstate C.F. "for the purposes of intimidating and discouraging" plaintiff from pursuing a legal action. *Id.* at 9. DOCCS forced plantiff to wait "unreasonable amounts of time to receive copying and notary

9

services" while confined in Upstate C.F. *Id.* at 11. DOCCS also refused to permit plaintiff to make a court appearance in Erie County Family Court on November 10, 2016 and December 15, 2016. *Id.*

### 7. Preference Transfer

DOCCS "canceled the preference transfer of the plaintiff so that he[] remain[s] far away from family and friends[.]" Compl. at 11.

### 8. Verbal Harassment

The defendants "are using an anonymous party to oppress the plaintiff with their advance technology to verbally harass him through the airwaves on a[n] every day basis[.]" Compl. at 26.

## C. Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights[ but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*,

556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").  In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

With respect to individuals sued because of their capacity as a supervisor, it is well established that supervisors cannot be liable under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on respondeat superior." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring.[3]  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

### 1. Eighth Amendment Excessive Force

---

[3] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)).  Absent any authority to the contrary, the Court has applied *Colon* in this case.

Plaintiff's complaint alleges that defendants Rief, Barcomb, Engstrom, Waldron, Rowe, and Baxter assaulted him in Clinton C.F. on May 11, 2016, at approximately 10:00AM for no reason. Compl. at 12. As a result of the assault, plaintiff suffered several injuries, including a broken finger and fibula. *Id.* at 13-14. On August 26, 2016, while plaintiff was confined in Upstate C.F., defendants Russell, Cox, and Rufa attacked plaintiff for no reason while plaintiff was inside his cell. *Id.* at 18. As a result of the assault, plaintiff "sustained an abnormal left lower rib and refractured the fibula in his left lower leg." *Id.* at 19.

Mindful of the Court's obligation to liberally construe a pro se litigant's pleadings, the Court concludes that defendants Rief, Barcomb, Engstrom, Waldron, Rowe, Baxter, Russell, Cox, and Rufa are required to respond to plaintiff's excessive force claims as asserted in the complaint. The Court expresses no opinion concerning whether the complaint can withstand a properly filed motion to dismiss with respect to these claims.

## 2. Fourteenth Amendment Due Process

Liberally construed, plaintiff's complaint alleges that defendants Bullis, Liberty, Venettozzi, and Rodriguez violated his procedural due process rights during the disciplinary hearings arising out of the IMRs issued to plaintiff following the use-of-force incidents in May and August 2016. *See generally* Compl. at 14-18, 19-21. The Due Process Clause of the Fourteenth Amendment contains both a substantive and procedural component. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). With respect to procedural due process, to state a cognizable claim under Section 1983 arising out of a disciplinary hearing, a complaint must allege that the plaintiff (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d

Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84; *Tellier*, 280 F.3d at 79–80; *Hynes*, 143 F.3d at 658. The prevailing view in this circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor. *See, e.g., LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin*, No. 94-CV-0985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001).

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S. at 484)). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where

13

appropriate.[4]  *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).  While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*.[5] *Colon*, 215 F.3d at 231.  Thus, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that restrictive confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions."  *Davis v. Barrett,* 576 F.3d 129, 133 (2d Cir. 2009) (citing *Colon*, 215 F.3d at 231).  In this case, the Court assumes for purposes of this Decision and Order, that plaintiff's complaint, which alleges that he was sentenced to between 120 and 205 days in SHU confinement at the conclusion of each of the disciplinary hearings, satisfies the "atypical and significant hardship" element of a procedural due process claim.

The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest were addressed by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 564-67, (1974).  Under *Wolff*, the constitutionally mandated protections include the right (1) to receive written notice of the charges; (2) to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and

---

[4]  "Under the normal conditions of SHU confinement in [a] New York [State prison], the prisoner is[] placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling.  Visitors are permitted, but the frequency and duration is less than in general population.  The number of books allowed in the cell is also limited."  *Palmer v. Richards*, 364 F.3d 60, 66 n.3 (2d Cir. 2004) (internal quotation marks and alterations omitted).

[5]  For example, segregation for a period of thirty days was found by the Supreme Court in *Sandin* not to impose a significant hardship on an inmate.  *Sandin*, 515 U.S. at 485-86.  The Court explained that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence.  *Id*.

penological concerns; (3) to receive a written statement by the hearing officer explaining his decision and the reasons for the disciplinary action being taken; and (4) in some circumstances, to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-67; *see also Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir.1988). Additionally, in order to pass muster under the Fourteenth Amendment, a hearing officer's disciplinary determination must garner the support of at least "some evidence." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). The Fourteenth Amendment also guarantees inmates the right to an unbiased hearing officer to address a disciplinary charge. *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996); *see also Davidson v. Capuano*, No. 78-CV-5724, 1988 WL 68189, at *8 (S.D.N.Y. June 16, 1988) (citing *McCann v. Coughlin*, 698 F.2d 112, 122 n.10 (2d Cir. 1983)). An impartial hearing officer is one who "does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990).

Mindful of the Court's obligation to liberally construe a pro se litigant's pleadings, the Court concludes that the complaint alleges enough at this early stage to survive review under Sections 1915 and 1915A to require a response from defendants Bullis, Liberty, and Venettozzi concerning the June, October, and December 2016 hearing determinations. The Court arrives at the same conclusion concerning the due process claim asserted against defendant Rodriguez with respect to plaintiff's appeal of the October 2016 hearing determination. The Court expresses no opinion concerning whether the complaint could withstand a properly filed motion to dismiss with respect to these due process claims.

The Court reaches a different conclusion, however, regarding the due process claim asserted against defendant Rodriguez with respect to plaintiff's appeal of the June 2016

hearing determination. As alleged in the complaint, defendant Rodriguez is a supervisory

official who reviewed the June 2016 hearing determination. Compl. at 16. As discussed

above in part III of this Decision and Order, personal involvement is a prerequisite to a

Section 1983 claim. *Wright*, 21 F.3d at 501. Supervisors may be found personally liable if,

*inter alia*, they were notified of the constitutional violation and failed to remedy it. *See, e.g,*

*Colon*, 58 F.3d at 873. In this instance, the complaint alleges that, following the June 2016

hearing by defendant Bullis, plaintiff appealed the determination to defendant Venettozzi.

Compl. at 16. Although defendant Venettozzi affirmed the determination on September 6,

2016, two months later on November 22, 2016, defendant Rodriguez ordered a rehearing.[6]

*Id*. at 16. Accordingly, as alleged in the complaint, defendant Rodriguez appears to have

remedied whatever constitutional violations occurred at the June 2016 hearing by ordering a

new hearing.[7] In any event, there are no allegations in the complaint how defendant

Rodriguez's decision to order a rehearing deprived plaintiff of any constitutional due process

protections. Accordingly, the due process claim asserted against defendant Rodriguez

arising from allegations that he ordered a rehearing of the June 2016 hearing is dismissed for

failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii)

and 1915A(b)(1).

### 3. First Amendment Access to Courts

---

[6] Based on the allegations in the complaint, it is unclear how the matter made its way before defendant Rodriguez, who is alleged to have the same title within the DOCCS as defendant Venettozzi. For instance, it is not clear whether plaintiff filed a subsequent appeal directly to defendant Rodriguez after receiving the affirmance from defendant Venettozzi, or whether defendant Rodriguez sua sponte ordered the rehearing.

[7] The complaint specifically alleges that defendant Rodriguez "issue[d a] decision ordering a rehearing" but says nothing about whether the June 2016 hearing determination was explicitly or effectively reversed by defendant Rodriguez. Although the Court suspects that "ordering a rehearing" has the same affect as reversing the hearing determination, at this early juncture the Court hesitates to render such a conclusion.

Liberally construed, plaintiff's complaint asserts a First Amendment court access claim against (1) defendants Rief, Barcomb, Engstrom, Waldron, Rowe, and Baxter arising out of the use-of-force incident in May 2016, and (2) defendant DOCCS arising out of plaintiff's housing assignment at Clinton C.F., the delay in receiving certain services, and a court appearance. Compl. at 8-9, 11.

Prisoners retain the right to "petition the Government for a redress of grievances." U.S. Const. amend. I.; *see also Bounds v. Smith*, 430 U.S. 817, 824 (1977); *accord, Lewis v. Casey*, 518 U.S. 343, 350 (1996). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents, or file them[.]" *Lewis*, 518 U.S. at 350 (citations omitted). The Supreme Court has determined that an indigent inmate-plaintiff's right to access the courts includes the right to access notarial services to authenticate legal documents. *Bounds*, 430 U.S. at 824-25. To state a plausible court access claim, a complaint must allege that (1) the defendant acted deliberately and maliciously, and (2) plaintiff suffered an actual injury as a result of the defendant's conduct. *Davis*, 320 F.3d at 351.

### a. Defendants Rief, Barcomb, Engstrom, Waldron, Rowe, and Baxter

The complaint alleges that defendants Rief, Barcomb, Engstrom, Waldron, Rowe, and Baxter assaulted plaintiff on May 11, 2016, at Clinton C.F. in an effort to interfere with his (unspecified) "legal actions." Compl. at 9. There are no other allegations concerning this claim in plaintiff's complaint. Without more, it cannot, and does not, survive initial review. The complaint does not specify the "legal actions" with which defendants interfered, nor does the complaint allege that plaintiff suffered any prejudice or injury in connection with his legal actions as a result of defendants' conduct. For these reasons, the court access claim

asserted against defendants Rief, Barcomb, Engstrom, Waldron, Rowe, and Baxter is dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

## b. Defendant DOCCS

Plaintiff's complaint alleges that defendant DOCCS interfered with plaintiff's access to the courts by (1) housing plaintiff in Upper F Block 9-23 cell at Clinton C.F. for eleven days in August 2015; (2) double-bunked plaintiff at Upstate C.F. "for the purpose of intimidating and discouraging him from seeking to appeal the denial of [the 440.10 motion]"; (3) delayed in providing plaintiff copies and notary services; and (4) "refused to allow the plaintiff to appear at [family court appearances] on November 10, 2016 and December 15, 2016." Compl. at 8-9, 11.

In addition to the allegations failing to satisfy the injury element of a court access claim, plaintiff's claims against defendant DOCCS fail for another reason, as well. The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his state in federal court under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).[8] Eleventh Amendment immunity "extends beyond the states themselves to 'state agents and state instrumentalities' that are,

---

[8] Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well settled that Congress did not abrogate states' immunity through Section 1983, *Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977).

effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  It is well-settled that DOCCS is entitled to assert the state's Eleventh Amendment immunity.  *Santiago v. N.Y.S. Dep't of Corr. Serv.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991); *Rivera v. Goord*, 119 F. Supp. 2d 327, 336 (S.D.N.Y. 2000).  Accordingly, plaintiff's claims asserted against defendant DOCCS are dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Eighth Amendment Medical Indifference

Plaintiff's complaint asserts Eighth Amendment deliberate medical indifference claims against defendants Waterson, Adams, Calley, Macelaru, and Mandalaywala.  Compl. at 22-23.

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Deliberate indifference has two necessary components, one objective and the other subjective.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The objective component of an Eighth Amendment deliberate indifference claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted).  Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (internal quotation marks omitted). "[D]eliberate indifference entails something

19

more than negligence but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway*, 37 F.3d at 66 (internal quotation marks omitted).

Mindful of the Court's obligation to liberally construe a pro se litigant's pleading, the Court concludes, for purposes of this Decision and Order, that the complaint satisfies the objective element of a medical indifference claim.[9]  Turning to the subjective element, with respect to the failure of defendants Adams, Calley, Mandalaywala to order an MRI or refer plaintiff to a physical therapist, chiropractor, or specialist, those decisions are squarely within the discretion of medical providers and are "classic example[s] of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *see also Cuellar v. Livingston*, 321 F. App'x 373, 374 (5th Cir. 2009) (affirming the district court's dismissal of the plaintiff's medical indifference claim where the plaintiff alleged that the defendant "failed to refer him to a chiropractor or bone specialist").  Accordingly, plaintiff's medical indifference claims asserted against defendants Adams, Calley, and Mandalaywala based on the failure to send plaintiff for an MRI or to a specialist are dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

In addition, the allegation that defendants Adams, Calley, and Macelaru failed to provide plaintiff with a splint for his broken finger or a leg brace for his fractured fibula is not sufficient to plausibly suggest that defendants recklessly disregarded a substantial risk of

---

[9]  The Court renders no opinion concerning whether the complaint could satisfy a properly filed motion to dismiss with respect to this element of the deliberate medical indifference claim. *Compare Blanche v. Pirelli*, No. 08-CV-4751, 2009 WL 2499737, at *5 (S.D.N.Y. Aug. 7, 2009) (concluding that the plaintiff's allegations that he suffered a broken finger and severe pain and "is left with . . . disfigurement" was sufficient to satisfy the objective element of a deliberate medical indifference claim) *with Felix v. Simon*, No. 01-CV-6023, 2004 WL 5739416, at *7 (E.D.N.Y. Jan. 14, 2004) (concluding that the plaintiff's broken ankle did not satisfy the objective element of a deliberate medical indifference claim).

serious harm to plaintiff.  There are no allegations in the complaint that defendants Adams, Calley, and Macelaru had any reason to believe that, by choosing not to provide plaintiff with a splint or leg brace, plaintiff would be subjected to further serious harm.  Accordingly, plaintiff's medical indifference claims asserted against defendants Adams, Calley, and Macelaru based on the failure to provide plaintiff with a splint or leg brace are dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

The Court reaches a different conclusion concerning the claim against defendant Waterson, which arises from allegations that she refused to conduct an examination of plaintiff immediately following the assault on May 11, 2016.  Compl. at 18, 23.  Mindful of the Court's obligation to liberally construe a pro se litigant's pleadings, the Court concludes that defendant Waterson must respond to this claim.  The Court renders no opinion concerning whether the complaint could withstand a properly filed motion to dismiss with respect to this claim.

### 5. Verbal Harassment

In plaintiff's complaint, he alleges as follows:

> The defendants are using an anonymous party to oppress the plaintiff with their advance technology to verbally harass him through the airwaves on a[n] every day basis throughout the co[u]rse of the continuous abuse(s) of the plaintiff by the defendants as described in the causes of action.

Compl. at 26.  To the extent this purports to assert a verbal harassment cause of action, it is not cognizable under Section 1983.  *See, e.g., Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986).  Accordingly, the cause of action is dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

21

### 6. Preference Transfer

Plaintiff's complaint alleges that defendant DOCCS "canceled" a preference transfer to prevent plaintiff from being confined in a facility near family and friends. Compl. at 11. In addition to the fact that this claim is asserted against defendant DOCCS, an entity that is immune from suit under the Eleventh Amendment (as discussed above in part III.C.3.b of this Decision and Order), the claim fails because prisoners have no constitutional right in remaining at a particular correctional facility. *David v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998). Accordingly, this claim is dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 7. Deprivation of Personal Property

Plaintiff alleges that his television "was forward[ed] to a dressing room as a result of the use of force incident at Clinton [C.F.] on May 11, 2016," and that, following his release from the SHU at Upstate C.F., defendant DOCCS refused to return the television to plaintiff. Compl. at 25. While the "unauthorized intentional deprivation of property by a state employee . . . constitute[s] a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is [not] available," the claim as alleged in plaintiff's complaint fails to state a claim on which relief may be granted because DOCCS is immune from suit under the Eleventh Amendment. Accordingly, the claim is dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 8. Supervisor Liability

In the complaint's "17th Cause of Action," plaintiff alleges that defendants Annucci, Bellamy, Venettozzi, Rodriguez, Weishaupt, Kirkpatrick, and Uhler "failed to protect [him] from the hardships and pains that w[ere] caused by [their] employees" and that they "are legally responsible for protecting the plaintiff" based on their capacities as supervisors. Compl. at 24-25.  As discussed above in part III of this Decision and Order, supervisor liability under Section 1983 "cannot rest on respondeat superior." *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501.  Notwithstanding the allegations against defendants Venettozzi and Rodriguez concerning the disciplinary hearings (as discussed above in part III.C.2), the complaint alleges no facts plausibly suggesting that the defendants are liable under any of the cognizable theories of liability, *see Colon*, 58 F.3d at 873, and the complaint conclusorily alleges that defendants failed to protect plaintiff on the basis of their roles as supervisors. Accordingly, plaintiff's supervisor liability claims asserted against defendants Annucci, Bellamy, Venettozzi, Rodriguez, Weishaupt, Kirkpatrick, and Uhler are dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).[10]

### 9. Claims Asserted Against the Fourth Department, Court of Appeals, County Court; Judges Connolly, Whalen, Wilson; and Clerk of Court Cafarell

Plaintiff's complaint asserts claims against defendants Fourth Department, Court of Appeals, Whalen, Wilson, and Cafarell based on allegations that they denied plaintiff's request to appeal the denial of the 440.10 motion to the Fourth Department and Court of

---

[10]  Plaintiff's Fourteenth Amendment procedural due process claims asserted against defendants Venettozzi and Rodriguez nonetheless survive initial review based on the allegations specifically related to the disciplinary hearings, as discussed above in part III.C.2 of this Decision and Order.

Appeals and they denied his request for the appointment of counsel in connection with his appeal. Compl. at 6. The complaint also alleges that defendants County Court and Connolly violated his constitutional rights by (1) transferring his Article 78 proceeding to the Third Department, (2) not reversing defendant Liberty's October 2016 disciplinary hearing determination, and (3) denying plaintiff's request for the appointment of counsel. *Id.* at 21-22.

State courts are not subject to suit under Section 1983. *Zuckerman v. Appellate Div.*, 421 F.2d 625, 626 (2d Cir. 1970). In addition, "[j]udges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (internal quotation marks omitted); *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[A] judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity."); *DuQuin v. Kolbert*, 320 F. Supp. 2d 39, 41 (W.D.N.Y. 2004) ("[A] judge is immune only for actions performed in his judicial capacity."). This absolute immunity has "been extended to individuals performing duties 'closely associated with the judicial process,'" including clerks of the court. *Young*, 41 F.3d at 51 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)); *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). To do determine whether a clerk's conduct in a particular case is judicial in nature, a court takes a "functional approach and affords absolute immunity when the Clerk is performing a discretionary act, or performing a duty that inherently relates to resolving a dispute." *Dzwonczyk v. Suddaby*, No. 10-CV-0300, 2010 WL 1704722, at *6 (N.D.N.Y. Apr. 28, 2010) (citing *Rodriguez*, 116 F.3d at 67) (internal quotation marks omitted). In this case, defendants Connolly, Whalen, and Wilson are alleged to have (1) denied plaintiff's request to appeal the denial of the 440.10 motion and (2) transferred an Article 78 proceeding to the

24

Third Department, both of which were taken within their judicial jurisdiction. *See, e.g., Glendora v. City of White Plains*, 53 F. Supp. 2d 621, 624-25 (S.D.N.Y. 1999) (concluding that the two defendant-judges were entitled to absolute immunity where the complaint alleged that one of the judges improperly transferred the plaintiff's prior action to a different venue and the other judged unlawfully dismissed it). Defendant Cafarell, too, is alleged to have "dismissed and denied" plaintiff's request to appeal the denial of the 440.10 motion – a task obviously integral to the judicial process and therefore under the protection of judicial immunity. *See, e.g., Chance v. Conn. Superior Court*, No. 04-CV-0155, 2004 WL 2958496, at *2 (D. Conn. 2004) (concluding that the defendant-clerk was entitled to judicial immunity based on the allegation that the clerk unlawfully dismissed the plaintiff's appeal and denied his motion for reconsideration).

Finally, plaintiff's claims against defendants Fourth Department, Court of Appeals, County Court, Connolly, Whalen, Wilson, and Cafarell are subject to dismissal on the basis that they are barred by the *Rooker-Feldman* doctrine, which recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments.[11] *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Under the *Rooker-Feldman* doctrine, a district court lacks jurisdiction to consider a plaintiff's claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen*, 626 F.3d at 154 (citation omitted). In this case, plaintiff alleges that the Fourth Department

---

[11] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

improperly denied his request to appeal the 440.10 motion and that the County Court improperly transferred his Article 78 proceeding to the Third Department and improperly declined to reverse the October 2016 hearing determination. Compl. at 6-7, 21-22. Although plaintiff frames his complaint as asserting constitutional claims, he asks the Court to (1) immediately release him based on allegations that he is being held in prison unlawfully and (2) reverse the October 2016 hearing determination by defendant Liberty that was the subject of the Article 78 proceeding in County Court. *Id.* at 27. "A plaintiff may not overcome the [*Rooker-Feldman*] doctrine and seek reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action." *Rabinowitz v. N.Y.*, 329 F. Supp. 2d 373, 376 (E.D.N.Y. 2004) (quoting *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)).

In summary, because state courts are not subject to suit under Section 1983, the defendant-judges and defendant-clerk of the court are immune from suit, and because plaintiff seeks reversal of state court judgments over which this Court has no jurisdiction, his claims asserted against defendants Fourth Department, Court of Appeals, County Court, Connolly, Whalen, Wilson, and Cafarell are dismissed for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 10. *Peralta* Waiver

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a Section 1983 action seeking money damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction, unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . ., or called into question by a federal court's issuance of a writ of habeas

corpus[.]"[12]  *Heck*, 512 U.S. at 487 (internal citation omitted).  Moreover, the *Heck* Court

directed that, "when a state prisoner seeks damages in a § 1983 suit, the district court must

consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of

his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff

can demonstrate that the conviction or sentence has already been invalidated."[13]  *Id.*

Conversely, where the Section 1983 action, even if successful, will *not* demonstrate that

invalidity of any outstanding criminal judgment or prison disciplinary determination against the

plaintiff, the court should allow the action to proceed.  *Id.*  In a subsequent case, *Edwards v.

Balisok*, 520 U.S. 641 (1997), the Supreme Court made clear that *Heck*'s favorable

termination rule applies to challenges made under Section 1983 to procedures used in

disciplinary proceedings that deprived a prisoner of good time credits.  *Edwards*, 520 U.S. at

647-48; *see also Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006).

     In *Peralta*, the Second Circuit ruled that *Heck*'s "favorable termination" rule was not an

absolute bar to a prisoner subject to "mixed sanctions," i.e., "sanctions that affect both (a) the

duration of his imprisonment and (b) the conditions of his confinement[.]"  *Peralta*, 467 F.3d at

104.  The Second Circuit held that "a prisoner subject to such mixed sanctions can proceed

separately, under § 1983, with a challenge to the sanctions affecting his conditions of

confinement without satisfying the favorable termination rule, *but . . . he can only do so if he

is willing to forgo once and for all any challenge to any sanctions that affect the duration of his*

---

[12]  Absent such a showing, an inmate may only seek relief in the federal courts through a petition for
habeas corpus.  *See Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999).

[13]  In a subsequent case, the Supreme Court noted that "*Heck* uses the word 'sentence' to refer not to
prison procedures, but to substantive determinations as to the length of the confinement."  *Wilkinson v. Dotson*,
544 U.S. 74, 83 (2005).  The Court further explained that "*Heck* uses the word 'sentence' interchangeably with
such other terms as 'continuing confinement' and 'imprisonment.'"  *Wilkinson*, 544 U.S. at 83.

*confinement.*"  *Id*. (emphasis in original).

Here, plaintiff's June, October, and December 2016 hearing sentences implicate the validity of plaintiff's disciplinary conviction and sentence because plaintiff was subjected to "mixed sanctions" affecting both the duration (recommended loss of good-time credits) and the conditions of his confinement (SHU).  Compl. at 17, 20.  Although plaintiff alleged that he challenged the October 2016 disciplinary disposition in an Article 78 proceeding in state court, the complaint does not allege whether plaintiff was successful in that challenge. Rather, the complaint only alleges that County Court improperly transferred the matter to the Third Department.  *Id.* at 21.  There is no indication in the complaint whether plaintiff filed an Article 78 proceeding challenging the December 2016 disciplinary hearing determination.

Because plaintiff has not demonstrated that his disciplinary dispositions have been invalidated, *Heck* bars the due process claims arising from those determinations unless plaintiff "abandon[s], not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding[s] he is attacking in [this] § 1983 suit."  *Peralta*, 467 F.3d at 104.

Accordingly, the Court directs plaintiff to advise the Court in writing, within thirty (30) days of the filing date of this Decision and Order, whether he waives for all times all claims in this action relating to the disciplinary sanctions affecting the duration of his confinement (i.e., the loss of good time) in order to proceed with his claims challenging the sanctions affecting the conditions of his confinement.[14]  The Court specifically advises plaintiff that the Court will deem his failure to file this statement (the "*Peralta* Waiver") within the required time to

_____

[14]  In the alternative, plaintiff may demonstrate that the disciplinary sentence was reversed or invalidated.

28

constitute his refusal to waive these claims, and such failure will result in the dismissal without prejudice of the Fourteenth Amendment due process claims against defendants Bullis, Liberty, Venettozzi, and Rodriguez arising from the June, October, and December 2016 hearing determinations and appeals therefrom.

Although some claims asserted in the complaint have survived sua sponte review, the Court will not at the present time direct service of the complaint or require a response from any defendants until this *Heck* issue is resolved as set forth above.

## IV. DISCOVERY MOTION

Plaintiff's Discovery Motion lists several discovery demands for production by defendants and requests that the Court direct defendants to disclose "the requested material." Discovery Motion at 4-8. The Court construes this request as a motion to compel.

"A party needs to first serve discovery demands before moving to compel their production[.]" *Torres v. Artus*, No. 14-CV-0062, 2017 WL 2240254, at *4 (W.D.N.Y. May 23, 2017). Because plaintiff filed the Discovery Motion prior to service of process on the defendants, the motion is premature. Plaintiff is advised that, after defendants have answered the complaint, the Court will issue a Mandatory Pretrial Discovery and Scheduling Order. At that time, plaintiff may request from defendants the materials he now seeks in the Discovery Motion, along with additional discovery in support of his remaining claims in

accordance with the Federal Rules of Civil Procedure.[15]

The Discovery Motion also contains a request that the Court "order a hearing for a summary judgment." Discovery Motion at 8. Such request is also premature because defendants have not been served and discovery has neither commenced nor concluded.

Accordingly, plaintiff's Discovery Motion is denied without prejudice.

## V.    COUNSEL MOTION

Also pending before the Court is plaintiff's Counsel Motion. Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be considered by the Court when ruling on such a motion. *Hendricks*, 114 F.3d at 392. As a threshold matter, the Court should ascertain whether the indigent's claims seem likely to be of substance. *Id.* (citing *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986). If so, the following should then be considered:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

---

[15]    Parties may seek "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Several methods of discovery, including interrogatories, requests for production of documents, and depositions are available to parties. Each method of discovery entails certain costs and imposes various burdens on the parties. Discovery may also be obtained from non-parties by subpoena. Subpoenas to non-parties are governed by Rule 45 of the Federal Rules.

*Hodge*, 802 F.2d at 61-62; *accord, Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994). None of the foregoing factors are controlling in a particular case, and each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, J.) (citing *Hodge*, 802 F.2d at 61).

This action was only recently commenced, and the defendants against whom the surviving claims are asserted have not yet been served or responded to the allegations contained in plaintiff's complaint. The threshold for surviving review under 28 U.S.C. § 1915(e) is minimal, and the court's finding that plaintiff's complaint should be accepted for filing with respect to certain claims is hardly the product of a thorough analysis of the likely merits of the case. In light of the foregoing, plaintiff's Counsel Motion is denied without prejudice. After the *Heck* issue is resolved concerning plaintiff's due process claims and after defendants have been served with process and responded to the allegations in plaintiff's complaint, plaintiff may then choose to file a new motion for appointment of counsel, at which time the court might be better able to determine whether such appointment is warranted in this lawsuit.

## VI.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 18) is **GRANTED**.[16] The Clerk shall provide the superintendent of the facility in which plaintiff is currently housed with a copy of plaintiff's authorization form (Dkt. No. 19) and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28

---

[16]  Plaintiff should note that, although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

U.S.C. § 1915;[17] and it is further

ORDERED that the Clerk shall provide a copy of plaintiff's authorization form (Dkt. No. 6) to the Financial Deputy of the Clerk's Office; and it is further

ORDERED that plaintiff's Discovery Motion (Dkt. No. 4) is **DENIED without prejudice**; and it is further

ORDERED that plaintiff's Counsel Motion (Dkt. No. 5) is **DENIED without prejudice**; and it is further


ORDERED that plaintiff's claims against the New York State Department of Corrections and Community Supervision are **DISMISSED with prejudice**[18] pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and it is further

ORDERED that the following claims survive the Court's sua sponte review pursuant to 28 U.S.C. §§ 1915 and 1915A and require a response: (1) Eighth Amendment excessive force claims asserted against defendants Rief, Barcomb, Engstrom, Waldron, Rowe, Baxter, Russell, Cox, and Rufa; (2) Eighth Amendment deliberate medical indifference claims asserted against defendant Waterson; and (3) Fourteenth Amendment due process claims asserted against defendants Bullis, Liberty, Venettozzi, and Rodriguez as described in above

---

[17] While Section 1915 permits indigent litigants to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b); *Harris v. City of N.Y.*, 607 F.3d 18, 21 (2d Cir. 2010)).

[18] Generally, when a district court dismisses a pro se litigant's claim sua sponte, the plaintiff will be allowed to amend his pleading. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). An opportunity to amend is not required, however, where the defects in the claims are substantive rather than merely formal, such that any amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *accord, Pucci v. Brown*, 423 F. App'x 77, 78 (2d Cir. 2011). Amendment of the claims asserted against defendant DOCCS would be futile.

in part III.C.2 of this Decision and Order.  Because the Fourteenth Amendment claims asserted against defendants Bullis, Liberty, Venettozzi, and Rodriguez cannot proceed unless and until plaintiff files the required *Peralta* waiver or shows that the June, October, and December 2016 hearing determinations were reversed or invalidated in some manner, no summonses will be issued for any defendant unless and until the *Heck* issue is resolved; and it is further

ORDERED that, except as to the foregoing, the remaining claims asserted in the complaint are **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b);[19] and it is further

ORDERED that plaintiff shall advise the Court in writing, **within thirty (30) days** of the filing date of this Decision and Order, whether he waives **for all times** all claims in this action relating to disciplinary sanctions arising out of the June, October, and December 2016 disciplinary hearing determinations affecting the duration of his confinement (recommended good time loss) in order to proceed with his claims challenging the sanctions affecting the conditions of his confinement; and it is further

ORDERED that, in the event plaintiff fails to timely file the required *Peralta* waiver, he will be deemed to have refused to waive the claims relating to disciplinary sanctions arising out of the June, October, and December 2016 disciplinary hearings determinations affecting the duration of his confinement (recommended good time loss), and the due process claims

---

[19]    Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint that cures the deficiencies identified in this Decision and Order.  Any amended complaint, which shall supersede and replace the complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised.  Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

relating to the June, October, and December 2016 disciplinary hearings and appeals therefrom shall be dismissed without prejudice in their entirety; and it is further

ORDERED that upon plaintiff's filing of the *Peralta* waiver, or at the expiration of thirty days with no *Peralta* waiver filed, the Clerk shall return this file to the Court for further review; and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Dated: November 19, 2018
        Albany, New York

Mae A. D'Agostino
U.S. District Judge