UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

WAYNE PHILLIP VANCE,

                      Plaintiff,

v.

                                                9:18-cv-748 (BKS/ATB)

GLEN ENGSTROM, et al.,

                      Defendants.

---

**Appearances:**

*Plaintiff pro se:*
Wayne Phillip Vance
12-B-3682
Attica Correctional Facility
Box 149
Attica, NY 14011

*For Defendants:*
Letitia James
Attorney General of the State of New York
Shannan Collier Krasnokutski
Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

                                  **MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

      Plaintiff Wayne Phillip Vance, currently an inmate at Attica Correctional Facility, brought this action under 42 U.S.C. § 1983 against the New York State Department of Corrections and Community Supervision ("DOCCS") and several of its employees. (Dkt. No. 1). On August 4, 2022, after Plaintiff refused to be transported from Attica to a facility nearer

Syracuse, New York for the trial scheduled to begin on August 1, 2022, the Court issued an Order to Show Cause directing Plaintiff to set forth "why this case should not be dismissed for failure to prosecute and/or failure to comply with court orders." (Dkt. No. 279, at 9). Plaintiff responded to the Court's order, (Dkt. No. 281), and has submitted a number of other letters to the Court, (*see* Dkt. Nos. 280, 283, 284, 285, 287, 288, 289, 290, 291, 292, 293, 295, 296, 297, 298, 300, 301, 302, 304, 305, 306, 307, 308, 311). Defendants responded to Plaintiff's submission, arguing that Plaintiff's "extensive history of disregard for Court orders, including his most recent failure to appear for trial, supports dismissal of his case." (Dkt. No. 282, at 2; *see also* Dkt. No. 277 (Defendants' request for dismissal with prejudice)). At the Court's direction, Defendants also submitted an evidentiary response to Plaintiff's claim that he was prevented from bringing his property. (Dkt. No. 294). For the following reasons, the Court grants Defendants' motion and dismisses this action under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and failure to comply with Court orders.

## II. BACKGROUND

As the Court noted in its order to show cause, Plaintiff's "refusal to leave his facility for trial on July 28, 2022, follows a history of failing to follow court orders and disruptive conduct." (Dkt. No. 279, at 2). This history includes refusing to be deposed until after Defendants filed a motion to dismiss for failure to prosecute; failing to comply with the Court's orders, including an order directing him to provide a proffer of the testimony expected from his trial witnesses; refusing to follow the Court's orders to stop his argumentative and disruptive discourse during court telephone conferences; and repeatedly disparaging this Court and its authority. Plaintiff has been warned multiple times that failure to follow the Court's orders and any further "disruptive conduct" could lead to contempt sanctions, including the dismissal of his case. (*See, e.g.*, Dkt. No. 148 (warning on December 28, 2020); Dkt. No. 196 (warning on December 9, 2021); Text

Minute Entry dated 1/27/22; Text Minute Entry dated 7/26/22). The Court presumes familiarity for purposes of this decision with the history of this case, as set forth in the order to show cause, which is incorporated by reference. (Dkt. No. 279, at 2–8).

### A.     Plaintiff's Refusal to Be Transported for Trial

Trial on Plaintiff's two remaining excessive force claims was set to begin on August 1, 2022. DOCCS Directive 4919 governs "Transportation for Court Appearances." (Dkt. No. 294-3). Directive 4919 specifies that an inmate being transported for a court appearance "will be allowed to take only one court bag of personal property." (*Id.* at 3). The directive further specifies which items are "required" or "allowed" within the inmate's "one bag limit." (*Id.* at 4). The court bags "used for this purpose measure roughly 39"x23"." (Dkt. No. 294-2, ¶ 5). The inmate's property which is not transported for the court appearance "shall be packed and stored in accordance with Directive #4934, 'Inmate Property – Temporary Storage of Personal Belongings.'" (Dkt. No. 294-3, at 4; *see also* Dkt. No. 294-5 (Directive 4934 dated August 17, 2022)).[1] Directive 4919 requires the completion of a Form 4919C, which contains a provision memorializing an inmate's decision not to take legal papers. (Dkt. No. 294-3, at 3, 9). Directive 4919 states that "[i]f the inmate declines to take legal work, the draft/area sergeant will question the inmate and complete" the portion of the form stating the reasons why the inmate chose not to take legal papers. (*Id.*).

Defendants have submitted sworn declarations from Attica Correction Officer B. Christian and Sergeant T. Wilson providing the following information. (Dkt. Nos. 277, 294-1, 294-2). On July 28, 2022, CO Christian instructed Plaintiff to leave his cell so that he could be

---

[1] The Court does not rely on the version of Directive 4934 provided by Defendants, as its effective date post-dates the events at issue.

3

transported from Attica to a facility closer to Syracuse for trial. (Dkt. No. 277, ¶ 2; Dkt. No. 294-1, ¶¶ 2–3). CO Christian let the inmates who had upcoming travel out of their cells, after which Plaintiff "came to the front gate without any packed bags" and stated that he "was not leaving without his stuff." (Dkt. No. 294-1, ¶ 3). CO Christian was "advised that [Plaintiff] had refused to pack his bags the day before although he had received instruction to do so." (*Id.* ¶ 4). Plaintiff refused to "comply with the direction provided to him about preparing for the trip," and he refused to sign a form documenting his refusal to attend court. (*Id.* ¶ 6; *see also* Dkt. No. 276 (refusal to attend court form signed by CO Christian stating that Plaintiff refused to sign)). The next day, July 29, 2022, Plaintiff stopped Sergeant Wilson to "speak to [him] regarding an upcoming court trip." (Dkt. No. 294-2, ¶ 2). Plaintiff showed Sergeant Wilson "approximately 20–30 packages he had stacked on the rear shelf of his cell, each of which was approximately 6"x6"x8" in size." (*Id.* ¶ 3). Each package had a "hand-drawn evidence label upon it"; Sergeant Wilson noticed that one of the items was a "hot pot." (*Id.*).

In his letters to the Court Plaintiff has accused "the Defendants" of preventing him from coming to court. In a letter dated July 28, 2022, Plaintiff requested that the trial be rescheduled or adjourned "because the Defendants had used different tactics to prevent [him] from appearing in court for the scheduled trial proceedings." (Dkt. No. 280, at 1). According to Plaintiff, "A-Block area officers" at Attica "refused to provide [him] with enough draft bags to prevent [him] from packing [his] legal materials, exhibits and other personal property." (*Id.*). Plaintiff asserts that he was "able to show" the officers "the necessary legal papers" but that the officers "still went through with their ill-plans." (*Id.*; *see also* Dkt. No. 283, at 1 (similar letter dated August 1, 2022 in which Plaintiff again asserts that Defendants have used "different tactics" to prevent him from appearing at trial and that he "did not refuse to pack up or refuse to go to court")). In Plaintiff's

4

response to the Court's order to show cause, he similarly asserts that he is "under the care, custody and control of the Defendants who had used different tactics to prevent [him] from appearing in court" and that he "cannot be held[] accountable for their actions." (Dkt. No. 281, at 1). Plaintiff seeks a "judgement by default or necessity . . . for the relief demanded in [his] supplemental complaint" and argues that this case "must be assign[ed] to a new judge so that he or she will be able to carry out the special functions for the entering of a judgement by default or necessity" which is "long overdue." (*Id.*).

With his response, Plaintiff provides a list of over fifty separately numbered "exhibits" which he contends are "admissible evidence" that he was not permitted to pack. (Dkt. No. 281-1, at 1–2). While a few of these items may conceivably be related to the trial, (*see, e.g.*, *id.* at 2 ("Exhibit #113 a pro se litigation guidelines litigation packet")), the vast majority of the exhibits Plaintiff has listed have no discernible relevance to the two excessive force claims remaining for trial. To list just a few examples, Plaintiff contends he was prevented from packing up the following exhibits or legal material: Norelco clippers; his hot pot; "an electrical extension cord of the Plaintiff"; a Walkman; a fan; magazines from the library; "6 dupont registry magazines"; "catalogs of approved vendors"; various articles of clothing including "(3) pairs of boxers"; Plaintiff's "blood stained undershort"; personal mail; dentures; "incorrect, illegal or fraudulent legal materials"; the "illegitimate civil docket sheet for this case"; and various unidentified letters and photographs. (*Id.* at 1–2).

In a later submission, on September 6, 2022, Plaintiff attached an affidavit purportedly signed by seven inmate witnesses who witnessed Attica officials "use different tactics" to prevent Plaintiff from packing his legal materials, and a copy of an inmate grievance Plaintiff submitted regarding the issue. (Dkt. No. 288, at 9–12). That submission includes copies of letters

addressed to the "Inmates Records Staff or Attica Administrators," and dated in August, after the incident at issue here, requesting "1 or 2 regular size draft bags/personal property bag(s) to pack up and produce [Plaintiff's] legal materials, exhibits and other personal property." (*Id.* at 22–26).

    **B.**    **Summary of Plaintiff's Most Recent Submissions**

Since his refusal to be transported for trial, and after the Court issued its order to show cause, Plaintiff has submitted over twenty letters to the Court in which he continues to reject the Court's authority, disparage the Court's rulings, make requests in violation of the Court's order, and expound on issues irrelevant to the two excessive force claims remaining for trial.[2]

On September 6, 2022, the Court received a 31-page submission from Plaintiff again referencing his request for a judgment of "default or necessity"—a motion that the Court denied on December 16, 2021. (Dkt. No. 204). On September 15, 2022, the Court received a letter from Plaintiff containing his fourth motion seeking to recuse the undersigned and Magistrate Judge Andrew T. Baxter from this case. (Dkt. No. 292; *see* Dkt. Nos. 117, 203, 275 (denying Plaintiff's previous motions for recusal)). Plaintiff asserts that these recusals are necessary because the undersigned and Magistrate Judge Baxter "have been labeled as Defendants and [are] being sued for mishandling the case while conspiring with the other Defendants to encroach on" Plaintiff's rights. (*Id.* at 1). Plaintiff argues that the orders of the undersigned, Magistrate Judge Baxter, and Judge Mae A. D'Agostino are "invalid, void and unenforceable" and that these judges are "playing foul illegal games." (*Id.*). Plaintiff's letter also references his "illegally appointed standby trial counsel" and an "unlawful lengthy trial." (*Id.*). He again asserts that assignment of

---

[2] The Court has made it clear to Plaintiff that there are only two excessive force claims remaining for trial. (*See* Text Minute Entry dated 1/27/22 (telephone conference addressing the two remaining excessive force claims that will go to trial); Dkt. No. 252 (May 24, 2022 text order directing Plaintiff to submit a proffer of "the testimony Plaintiff expects to elicit from each witness that would be relevant to one of the remaining claims for trial: (1) the excessive force claim regarding the incident on 5/11/2016 and (2) the excessive force claim regarding the incident on 8/26/16")).

6

this matter to a new judge is warranted so that "judgement by default or necessity . . . for the relief demanded in [his] supplemental complaint" can be entered. (*Id.* at 2). Attached to this letter Plaintiff submits another copy of his "unresolved issues" letter and a copy of "The Plaintiff's Presentation Legal Packet for a Jury Trial." (Dkt. No. 292-1). Plaintiff's presentation is fifty-eight pages long and primarily consists of a recitation of his grievances regarding how this case has been handled and/or matters not related to the two excessive force claims remaining. (*See, e.g., id.* at 7 (referencing his "illegal court appointed standby trial counsel" and the Court's "illegal or deceptive activities"), 8 (referencing an "unlawful trial" and asserting that the Court "does not have any authority at all to conduct this trial" and has issued "illegitimate orders"), 13 (complaining about the "deliberate sabotaging of [his] entire criminal case" and his "unlawful imprisonment"), 20 (asserting that the Court has put Plaintiff and his friends and relatives "through a painfully wicked or poisonous legal process to cause us to suffer"), 39 (arguing that the undersigned "engaged in illegal or deceptive activities by conducting a pretrial telephone conference without any legal authority or right for such action while labeled as a Defendant"), 46–47 (arguing that his trial brief and memorandum of law state the facts which entitle him to be "released from this unlawful imprisonment for" his underlying criminal conviction), 48 (referencing "Exhibits A–T" which are relevant to Plaintiff's "criminal case"), 55 (referencing the "illegitimate civil docket sheet"), 58 (referencing the July 26, 2022 final pretrial conference and stating that the undersigned "developed the telephone conference record with a lot of mumbo jumbo nonsense in her unlawful attempt to act like she was obeying the law")). Plaintiff's presentation continually references his "supplemental complaint" and a judgment of "default or necessity." (*E.g., id.* at 7, 8–9, 15, 18, 29, 35–36, 56, 62 ("You guys as the trial jury are required to enter a special verdict or judgement by default or necessity against the Defendants for the

relief demanded in my supplemental complaint and motion papers for a summary judgement.")). It appears that Plaintiff intends this presentation as an opening statement and intends it to include a reading into the record of the filings in this case, many of which he denominates as "illegitimate." (*See id.* at 20–63; *see also* Dkt. No. 298, at 1, 3–4 (containing an "updated copy of pages 47 and 48" of Plaintiff's legal presentation)).

Plaintiff has continued to file letters that have nothing to do with the two excessive force claims remaining for trial. (*See* Dkt. Nos. 295, 295-1; *see also* Dkt. No. 296 (duplicate of Dkt. No. 295) (letters blaming Defendants for the NAACP's declining to represent Plaintiff in this matter and regarding "wrongful convictions and other problems"); Dkt. No. 298 (containing copy of letter to the NAACP informing it of its "obligation to work with [Plaintiff]"); Dkt. Nos. 291, 293 (copies of a June 16, 2022 letter entitled "unresolved issues")).

Plaintiff has continued to file requests that the Court acknowledge receipt of or respond to his various submissions, in violation of the Court's directive that he stop filing such requests. (*See* Text Minute Entry dated 7/26/22 (directing Plaintiff not to file any further "requests for acknowledgement"); Dkt. Nos. 284, 289). Plaintiff filed other irrelevant submissions. (*See, e.g.*, Dkt. Nos. 287 (submission consisting of a book page discussing the adoption of the Declaration of Independence), 301 (letter regarding "basketball")).

On September 28, 2022, the Clerk's Office of this Court received a large box from Plaintiff which contained many items marked as exhibits. (*See* Dkt. Nos. 297, 299). The contents of the box included, among other items, "one bag of bloody undershorts," state-issued prison clothes, a hot pot, a fan, an extension cord, clippers, "three books in terrible condition," dentures, a set of bed linens, and family photos. (Dkt. No. 299). In a letter accompanying these contents, Plaintiff stated that Defendants have been "conspiring" to prevent him from packing exhibits and

legal paperwork for trial and that he is "being forced to spend money on legal expenses and postage fee to mail out the [box contents] through the package room" at Attica. (Dkt. No. 297, at 1). Because the Court is not a repository for discovery materials and exhibits and/or evidence are not filed with the Court, the Court declined to review or accept the box for filing and ordered that the box be returned to Plaintiff at Attica. (Dkt. No. 299). Plaintiff's later letters disparage that Court Order. (*See* Dkt. No. 304 (complaining about the Court's "illegitimate docket text order" returning the property that Plaintiff sent to the Court); Dkt. No. 305 (same); Dkt. No. 308 (complaining that the Court "illegally returned" his evidence to Attica)).

Finally, Plaintiff submitted four "electronic recordings" which he asserts are "relevant to [his] assault by staff and personal injury claims." (Dkt. No. 302, at 1; *see also* Dkt. No. 303). While three of the recordings appear to be relevant to Plaintiff's remaining excessive force claims—including a DVD labeled "Vance, 12B3682, 5-11-16," a cassette tape labeled "Vance, W, 12B3682, CHO Bullis 16-388 6/29/16," and a DVD labeled "8/26/16, L16-459"—the other three cassette tapes appear to have no relevance.

### III. DISCUSSION

Defendants seek dismissal of this action with prejudice "as a sanction for Plaintiff's contempt." (Dkt. No. 277, at 1). Defendants argue that Plaintiff "willfully made himself unavailable for the August 1, 2022 trial date," noting that the Court cleared its calendar for this trial and the trial date was set after considering the availability of "nine defendants, and defense counsel." (*Id.* at 1–2). Defendants describe the lengths defense counsel and the nine defendants took in anticipation of the August 1, 2022 trial, including arranging for childcare and readjusting work schedules at DOCCS, which impacted "dozens of other correction officers who had to cover [the Defendants'] shifts." (*Id.* at 2). Defendants also cite to Plaintiff's history of disruptive conduct, "persistent disrespect of the Court on the record," and the numerous warnings the Court

9

has given Plaintiff regarding the sanction of dismissal. (*Id.*). In response to Plaintiff's assertions that Defendants provided him "insufficient draft bags" to pack his property and used different "tactics" to prevent his appearance at trial, Defendants note that none of the nine Defendants, who are "current and former correction officers at Clinton and Upstate Correctional Facilities," has "any involvement with Plaintiff's transport from Attica Correctional Facility." (Dkt. No. 282, at 1). Defendants also argue that Plaintiff's submissions fail to "acknowledge the significant disruptions posed to the Court and other parties by his failure to attend the trial" or indicate that Plaintiff "agree[s] to comply with Court orders" in the future. (*Id.*). Finally, Defendants note that (1) Plaintiff's various submissions discuss "vaguely-described exhibits appear[ing] to have no conceivable relevance to Plaintiff's two remaining excessive force claims"; (2) Plaintiff "continues to insist upon resolving his 'supplemental complaint'"; and (3) Plaintiff "remains focused on matters outside the merits of his actual remaining claims," such as his insistence that the case be assigned to a new judge. (*Id.* at 2; *see also* Dkt. No. 294, at 2–3). Defendants argue that these submissions demonstrate that, "if given another opportunity, Plaintiff will again disregard this Court's authority, insist on proceeding with irrelevant and previously-dismissed claims, and decline to properly prosecute this matter in accordance with the Court's direction." (Dkt. No. 294, at 3).

      Under Rule 41(b) of the Federal Rules of Civil Procedure, "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order," a court may dismiss the action. Fed. R. Civ. P. 41(b); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962); *see also* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge may order it dismissed."). When determining whether dismissal under Rule 41(b) is appropriate, courts consider whether:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004) (citations omitted). None of these factors is dispositive. *Lopez v. Smurfit-Stone Container Enter., Inc.*, 289 F.R.D. 103, 104–05 (W.D.N.Y. 2013).

Moreover, it is "beyond dispute" that "a district court may dismiss a case under Rule 41(b) when the plaintiff refuses to go forward with a properly scheduled trial." *Lewis v. Rawson*, 564 F.3d 569, 580 (2d Cir. 2009) (quoting *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)). In such instances the *Drake* factors may not be "particularly helpful," as the "intentional refusal to proceed with the commencement of a trial . . . may be fairly categorized as the most flagrant instance of a plaintiff's 'failure to prosecute.'" *Triplett v. Asch*, No. 17-cv-656, 2021 WL 2227748, at *4, 2021 U.S. Dist. LEXIS 103185, at *10–12 (N.D.N.Y. June 2, 2021) (first quoting *Lewis*, 564 F.3d at 577; and then quoting *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 364 (6th Cir. 1999)); *see also Lewis v. Frayne*, No. 12-cv-1070, 2018 WL 2248413, at *15, 2018 U.S. Dist. LEXIS 81839, at *50–51 (D. Conn. May 15, 2018) (noting that "courts often discuss both [*Lewis* and *Drake*] when determining whether dismissal for failure to proceed with trial is appropriate"), *aff'd*, 788 F. App'x 79 (2d Cir. 2019).

Here, the Court concludes that Plaintiff's history of disruptive conduct, disparagement of the Court's orders and its authority, refusal to focus on or prosecute the two remaining excessive force claims, and refusal to be transported for trial warrant dismissal of this action.

### A. Plaintiff's History of Disruptive Conduct

Before turning to the *Drake* factors, the Court considers Plaintiff's history of disruptive conduct and his refusal to prosecute the two excessive force claims remaining. As set forth above, Plaintiff's submissions are replete with references to the Court's "mishandling" of this case, the "illegitimate" orders that have been issued, the "unlawful trial," and the Court's lack of "authority." Plaintiff also repeatedly makes requests for the recusal of the undersigned and Magistrate Judge Baxter, and for the reassignment of this matter to a new judge who will enter a judgment of "default or necessity." Plaintiff's persistent disregard of the Court and its authority indicates that Plaintiff is unwilling to recognize or submit to the Court's authority over his claims. Plaintiff's defiant and insulting behavior weighs strongly in favor of dismissal. *Cf. Pimentel v. Delta Air Lines, Inc.*, 818 F. App'x 100, 101–02 (2d Cir. 2020) (summary order) (noting that the Second Circuit has "upheld dismissals with prejudice as a sanction where pro se litigants repeatedly used abusive language toward judges" and finding that the district court did not abuse its discretion in dismissing a pro se plaintiff's case where the plaintiff "continued to insult the judges and declare that he would not follow court orders" (citing *Koehl v. Bernstein*, 740 F.3d 860, 862–64 (2d Cir. 2014))); *see Wingate v. Burke*, No. 14-cv-4063, 2022 WL 3362164, at *1–3, 2022 U.S. Dist. LEXIS 123057, at *4–11 (E.D.N.Y. Apr. 18, 2022) ("*Wingate I*") (recommending dismissal of the plaintiff's case where the plaintiff "continued to address irrelevant issues at length, insult the Court and opposing counsel," and was generally "uncooperative [and] abusive"), *report-recommendation adopted sub nom. Wingate v. Greene*, 2022 WL 2702844, 2022 U.S. Dist. LEXIS 122916 (E.D.N.Y. July 12, 2022) ("*Wingate II*").

Second, despite his voluminous submissions to the Court, Plaintiff refuses to meaningfully acknowledge or address the two excessive force claims which remain for trial. Plaintiff refused to comply with the Court's order directing that he submit a proffer of the

12

relevant testimony that he expected to elicit from the approximately forty witnesses that he named in a witness list, (Dkt. Nos. 252, 269), and none of his trial submissions acknowledge or address the fact that there are only two excessive force claims remaining for trial, (Dkt. Nos. 229, 229-1, 240, 246, 248). Instead, Plaintiff remains stubbornly fixated on unrelated matters, including the criminal conviction for which he is presently incarcerated, the relief demanded in his "supplemental complaint," and the entry of a judgment by "default or necessity." Plaintiff has therefore forfeited his right to prosecute the two remaining excessive force claims. *Cf. Triplett*, 2021 WL 2227748, at *5, 2021 U.S. Dist. LEXIS 103185, at *14 ("Plaintiff's words and actions have made it abundantly clear that he no longer desires to prosecute this matter."); *Lewis*, 2018 WL 2248413, at *22, 2018 U.S. Dist. LEXIS 81839, at *72 ("[Plaintiff] has forfeited his right to prosecute this case.").

### B.     The *Drake* Factors

The Court also concludes that the *Drake* factors weigh in favor of dismissal. First, Plaintiff's failure to appear at trial on August 1, 2022, will cause a delay of significant duration for which he is responsible. *Drake*, 375 F.3d at 254; *see Spencer v. Doe*, 139 F.3d 107, 113 (2d Cir. 1998) (noting that there are two aspects to this first factor: "(1) that the failures were those of the plaintiff, and (2) that these failures were of significant duration" (citing *Jackson v. City of New York*, 22 F.3d 71, 75 (2d Cir. 1994)). Plaintiff failed to comply with DOCCS directives and orders to prepare for his transportation for the scheduled trial, and Defendants had no involvement whatsoever in Plaintiff's refusal to be transported. While Plaintiff contends that he was prevented from packing up and bringing with him exhibits and other evidence, most of the purported "exhibits" he identifies bear no relevance to the two excessive force claims remaining. *Cf. Frederick v. Murphy*, No. 10-cv-6527, 2018 WL 10247403, at *6–7, 2018 U.S. Dist. LEXIS 233136, at *18–21 (W.D.N.Y. Apr. 16, 2018) (finding that the plaintiff "failed to set forth a

13

satisfactory excuse for the disruption and expense caused by his failure to appear at trial" where "the only credible explanation for Plaintiff's failure to appear at his day-certain trial date was an apparent desire to take a shower prior to coming to court"). As the Court's trial calendar is booked until at least March 2023, Plaintiff's failure to appear at trial has occasioned a delay of at least seven months, and likely longer, as a new trial date would also need to accommodate the schedule of nine Defendants and two defense counsel. Moreover, Plaintiff's earlier disruptive conduct has led to other significant delays, and this case has been pending for over four years. (*See* Text Minute Entry dated 12/10/2020 and Text Order dated 12/28/2020 (Plaintiff refused to participate in a deposition until Magistrate Judge Baxter gave defense counsel leave to move to dismiss for lack of prosecution); Text Minute Entry dated 12/9/21 (Plaintiff rejected the first pro bono counsel appointed by the Court); Dkt. No. 217 (Plaintiff sought appointment of new pro bono counsel); Dkt. No. 245 (Plaintiff rejected the second pro bono counsel appointed by the Court)). The Court further notes that, in addition to the time it spent preparing for trial, it has also spent much valuable time and resources reviewing Plaintiff's numerous submissions which repeatedly raise issues irrelevant to the scope of the issues that the Court has ruled will be decided at trial, and baselessly insult the Court, Defendants, and Court-appointed attorneys.

The Court finds that the second factor also weighs in favor of dismissal. "While a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, dismissal of a *pro se* litigant's action as a sanction may nonetheless be appropriate so long as a warning has been given that noncompliance can result in dismissal." *Koehl*, 740 F.3d at 862 (internal citation, citation, and internal quotation marks omitted). Plaintiff has been warned multiple times that failure to follow the Court's orders and any further disruptive or obstructionist conduct would lead to contempt sanctions, including the dismissal of his case. (*See, e.g.*, Dkt. No. 148 (warning

14

Plaintiff on December 28, 2020 that obstructionist conduct at his deposition or the "rehash[ing]" of "various 'issues'" already addressed and decided in this case could lead to sanctions, "including the dismissal of his action" (emphasis omitted)); Dkt. No. 196 (warning Plaintiff on December 9, 2021 that "failing to follow the court's orders and any further disruptive conduct could lead to contempt sanctions including the dismissal of his case" (emphasis omitted)); Text Minute Entry dated 1/27/22 ("Plaintiff was warned that failing to follow the court's orders and any further disruptive conduct could lead to contempt sanctions including the dismissal of his case." (emphasis omitted))). Most recently, at the final pretrial conference on July 26, 2022, the Court "reminded" Plaintiff that "failing to follow the court's orders and any further disruptive conduct could lead to contempt sanctions including the dismissal of his case." (Text Minute Entry dated 7/26/22). The Court issued this warning after Plaintiff "argued with the court regarding the court's rulings." (*Id.*). It was the next day that Plaintiff failed to pack his property for transport. Thus, Plaintiff had clear notice that his case could be dismissed.

The third factor—likely prejudice to the Defendants as a result of further delay—also weighs in favor of dismissal. Plaintiff has not provided an adequate explanation for his failure to appear for trial on August 1, and his assertion that he was prevented from bringing a number of items which are not relevant to the claims remaining for trial does not outweigh the prejudice resulting to Defendants. As noted above, the nine Defendants and two defense counsel all "made sacrifices to ensure they were available for this trial," including arranging childcare and rearranging their work schedules, and this case has been pending for over four years. (Dkt. No. 277, at 2); *Wingate I*, 2022 WL 3362164, at *5, 2022 U.S. Dist. LEXIS 123057, at *15 (noting that prejudice "resulting from unreasonable delay may be presumed as a matter of law" and that, even absent that presumption, the defendants were prejudiced "by preparing for a trial that did

not go forward"); *Lewis*, 2018 WL 2248413, at *19, 2018 U.S. Dist. LEXIS 81839, at *63 (finding this factor weighed in favor of dismissal where the plaintiff had been "unnecessarily litigious, combative, and uncooperative"); *cf. Frederick*, 2018 WL 10247403, at *6, 2018 U.S. Dist. LEXIS 233136, at *18 ("Whatever minimal inconvenience Plaintiff experienced by not showering is far outweighed by the resulting prejudice to Defendants and the Court from his failure to appear.").

Fourth, the Court concludes that its need to alleviate congestion on its court calendar outweighs Plaintiff's right to an opportunity for a day in court. This Court has a full trial docket, with a backlog of trials resulting from the Covid-19 pandemic. Plaintiff had an opportunity for his day in court, and he unilaterally failed to appear for the scheduled trial. *Cf. Wingate II*, 2022 WL 2702844, at *3, 2022 U.S. Dist. LEXIS 122916, at *7–8 ("Plaintiff had his day in court, succeeding past the summary judgment stage, and the Court was prepared to afford him the trial he had sought."). Moreover, this factor is "more likely to weigh in favor of dismissal" where a plaintiff "swamp[s] the court with irrelevant or obstructionist filings" than where the plaintiff has "silently failed to proceed in a timely fashion." *Lewis*, 2018 WL 2248413, at *20, 2018 U.S. Dist. LEXIS 81839, at *64 (citation omitted). Here, even considering only the few months since Plaintiff's failure to appear for trial, Plaintiff has continued to submit disparaging and irrelevant filings, up to and including a large box of his personal property. Conspicuously absent from Plaintiff's many submissions is any meaningful reference to the two excessive force claims that were set for trial.

Finally, the Court has considered the efficacy of lesser sanctions and concludes that no lesser sanction than dismissal is appropriate in these circumstances. Plaintiff is proceeding in forma pauperis, and a monetary fine would therefore be unlikely to alter his behavior. *Cf.*

16

*Wingate I*, 2022 WL 3362164, at *5, 2022 U.S. Dist. LEXIS 123057, at *16. As Plaintiff is presently incarcerated, an order holding him in contempt also would be unlikely to change his behavior going forward. As described above, Plaintiff's submissions are replete with his criticisms of this Court and his disregard of its authority. There is therefore no reason to believe that Plaintiff will be willing to recognize or submit to the authority of this Court over his claims if the Court were to impose a lesser sanction.

In sum, the Court finds that the *Drake* factors weigh in favor of dismissal of this action. Plaintiff's evident disregard for the Court and other involved parties and his persistent focus on irrelevant matters such as his "supplemental complaint" while ignoring the two excessive force claims which remain for trial render it impossible for this case to proceed in any meaningful way. *Cf. Lewis*, 2018 WL 2248413, at *22, 2018 U.S. Dist. LEXIS 81839, at *72 ("Plaintiff's history of uncivil behavior, courtroom disruptions, aggressive courtroom behavior, frivolous filings, including motions for sanctions of opposing counsel, recusal of the court, requests to subpoena state officials with no relevant information, . . . as well as his repeated failure to proceed on the eve of trial, is the type of extreme vexatious conduct which overburdens the court, prejudices defense and makes a mockery of the justice system.").

### IV.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for dismissal with prejudice (Dkt. No. 277) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's letter request to reschedule the trial (Dkt. No. 280) is **DENIED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED with prejudice** for failure to prosecute and failure to comply with Court orders; and it is further

**ORDERED** that all other pending motions (Dkt. Nos. 292, 306) are denied as moot; and it is further

**ORDERED** that the Clerk of the Court is directed to serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules and close this case.

**IT IS SO ORDERED.**

Dated: November 15, 2022
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge